U.S. District Court Judge. This time, Chief Judge of Mankato for Little District of Pennsylvania would like to thank you very much for helping us out with our cases this morning. Alright, the second case on the list this morning is Martinez v. Thompson. Is that the right case? No, no. No reverses. Wrong list. Just trying to throw you a curve. Thank you, Judge. I'll be in touch with my cardiologist shortly after this. Good morning. May it please the court. George Bailikos on behalf of Mr. Kyle Rainey, the attorney. Judge, you have two minutes for rebuttal. Thank you. Your Honor, Mr. Rainey requests that the court reverse the District Court's order, and to release him from custody, because he was denied effective assistance of counsel. Specifically, Mr. Rainey's trial in the public counsel was ineffective for failing to urge the sufficiency of the evidence issue of that trial at on appeal. As a result, Mr. Rainey was convicted of first-degree murder and accomplished liability there. It's likely there isn't sufficient evidence to sustain that type of conviction. If the court agrees with Mr. Rainey, then the remedy is an unconditional wit on that first-degree murder conviction. Well, I'm familiar with the testimonies. How about if we agree with Mr. Rainey that he was improperly convicted of a first-degree offense, but we agree with the District Court Judge that he has not shown prejudice? Well, Your Honor, I don't know that you should agree with that conclusion, and here's why. Under Strickland, of course, there's two parts. Prejudice is what I think is the critical issue here in this case. Prejudice under Strickland doesn't mean that somehow the sentences were the same ultimately. All you have to show to succeed on that kind of claim is that the question is, is the court confident that Mr. Rainey would have been convicted of first-degree murder despite there being sufficient evidence to convict him of that crime? Well, wait a minute. I think of prejudice as it's very much linked to the deficient performance. But for the deficient performance, would there be a different result? The District Judge said no because he would have been convicted of second-degree murder and the sentence would be the same. There's two responses to that, Judge. One is, you're right, you have to link the deficient performance to the prejudice. And, of course, here our position is that but for counsel's failure to urge this point at trial in the form of a motion for an acquittal on that charge, and but for an appellate counsel's failure then to raise it as a grounds for an appeal, there's no effect. You don't think there was the sufficiency of the evidence at trial to be able to raise it in an appeal? That's true. Correct? That's true. And, in fact, wasn't Mr. Rainey's defense misidentification? I believe that was one of his defenses, Your Honor. Okay. At trial. Well, I mean, the trial, as I understood from the record, the trial was misidentification. To raise the sufficiency of the evidence, as was subsequently raised, that there was no specific intent to kill, wouldn't that be contradictory to the principal defense and wouldn't it perhaps was a non-strategic decision on counsel's part not to raise that issue? Well, Judge, that's a good point. However, the first answer I think is I don't think it's inconsistent to argue in the alternative, and that may be one strategic answer to the first part. However, I don't think it's ever a reasonable strategy to fail to raise an issue like the sufficiency of evidence to convict for a crime. That has constitutional dimensions. If he was correct and he moved for an acquittal on that charge, he would have been acquitted of first-degree murder and a jeopardy, in fact, would have passed at that moment. So I don't think, and we've cited a case in the New Orleans Circuit that says it directly, a failure to raise the insufficient evidence issue is present at this instance. So you're saying that's for a per se rule? In every case you must move for an acquittal based on the insufficiency of the evidence or you're per se ineffective? No. So that's not a rule that we were saying. I said it a little more directly. I think it's an appropriate rule to use in this case. As far as a per se rule applicable for all purposes and all circumstances, I wouldn't advocate that. I think there's no need for that kind of rule. But as applied in this situation, I think when there's certainly a coverable, at least a reasonable, and probably a winning argument that there was insufficient evidence at trial for this charge to ever have reached the jury. Did he preserve his sufficiency claim by using terms like the weight of the evidence? Yes, he did, Judge Fuentes, and here's how. At the first opportunity that he could raise that claim in his PCRA papers, he interchanged the words. But if you look at the substance of what he's actually arguing, you'll have to agree that he raised a sufficiency argument. He was talking about whether the evidence was sufficient to convict him beyond a reasonable doubt. He wasn't arguing it in a way that suggested there was enough evidence to go to the jury, but it just wasn't good enough evidence. That's not what he was arguing. In fact, the Superior Court twice recognized that he raised a sufficiency claim, and in that instance, especially when you're dealing with a prosaic litigant, if there's any doubt, it's construed in his favor. I think we've demonstrated in our reply brief how he exhausted that claim. Regardless of how he presented the argument, the court knew what he was talking about because it addressed his argument of sufficiency. Yes, in this case, yes. And in fact, Judge, if you take it one step, if you just step back for a moment, as long as he fairly presented it, that's his obligation to fairly present the claim so that the state courts get their crack at it. The jury convicted him of first-degree murder. In order to do that, would not the jury have had to have found all the elements necessary for second-degree murder? No. Which one was missing? To convict for first-degree murder, you would have to have found that Mr. Raines had a shared intent to kill. But you still have the condition of a felony and a death resulting from that crime. What else is missing for second-degree murder? A jury verdict. But maybe I didn't put the question correctly. Were the elements for second-degree murder before the jury? I mean, weren't those elements necessary for conviction for first-degree murder? No, they were not. First-degree murder is an intentional killing. Murder under Pennsylvania law is an unlawful killing of another human being. There are degrees of murder. First-degree murder requires a specific intent to kill. If you're going to go through a vicarious liability theory, I suppose, you have to still prove specific intent of the accomplice. Second-degree murder is a murder committed during or with the purpose of a perpetration of an enumerated felony under Section 2502 of the Crimes Code. One of the enumerated felonies is robbery. Those two crimes are not the same. Each requires proof of something else. Someone can commit a murder, but presumably without committing a robbery. So to answer your question, it's no. It was not required. The elements for second-degree murder weren't required when you found them for first-degree murder. If I'm answering this stuff. Yes, the Pennsylvania Supreme Court have a wrong with conviction. Second-degree murder is not unless you include offense of first-degree murder. Yes, they have, Judge, and we've studied those cases. I've studied the case in a brief. If you give me one moment. I'll take the word for it. I have no doubt. Yes. But where are we if we agree with you on the deficient performance, Tom? Where does that put this case? Well, I think to get to where Mr. Rain would like us to go is once you've established that there was, in fact, insufficient evidence and it was a deficiency not to raise that kind of argument, then I think you have to evaluate whether the guilty verdict for a crime the Commonwealth failed to prove is prejudicial. And I think if you look at Strickland, and this goes back to the district judge's decision, he had a very cogent analysis right up until the point where he said, and I'm misquoting him a bit, but Mr. Rain, he suffered prejudice to the extent he was improperly convicted. That's in the district judge's opinion. He should have just stopped there because that's all Strickland requires. What he did was add another level of analysis that Strickland was not required to find prejudice. It's the same analysis as in the Clark decision. You're familiar with the Clark decision? Yes. How do you distinguish Clark from this case? Well, I think to begin with, the situation was similar. We have a situation to sign up. We have a reason and a law. And under reason and a law, another distinction is family murder. And first of all, family murder was somehow a lesser accrued offense, so treated that way. But beyond that, I think when we're talking about prejudice, what the circuit court did was essentially do what Judge Savage did and apply the harmless error analysis that they suggested. But even more distinguishable, Clark is not a benefactor assistance case. As I'm reading, I think it was just a straight due process case. But on the question of prejudice, how are they different? In other words, in Clark, the court had concluded there was no prejudice because the sentence for second degree would have been similar to the sentence for first degree. And that's what the district judge concluded in this case. And that's right. In that respect, Your Honor, they're quite similar, the Fifth Circuit and Clark, to begin. We would respectfully suggest that the Fifth Circuit's opinion is as binding as the district judge's opinion, which is to say it's not binding on this court. Where did the district judge in this case go wrong? The moment Judge Savage concluded that Mr. Rainey was improperly convicted of a crime the Commonwealth didn't prove to be unreasonable about, that should have ended the analysis. What he did was then took a second step and said, well, let's take a look at the sentences anyway. Before that, he looked at the second degree offense. I thought he said the elements of the second degree were subsumed within the first degree offense. And so the jury must have determined that he killed somebody or that he's responsible for a murder in the course of a certain specified offense he erupted. And therefore, the sentence of life should be imposed because it's the same as it was already imposed. Your Honor, if I may. You can correct my comments. I think that, first, if Judge Savage would have assumed that second degree murder was necessarily a lesser degree offense than first degree murder, I think he would have been wrong. Secondly, if I'm understanding the question correctly, I think the problem is Judge Savage assumed a guilty verdict that the jury never rendered. The jury has the exclusive role of assigning the specific degrees of guilt for criminal homicide. And that never happened here. So in a prejudice analysis, I don't think it's appropriate, quite frankly, in any analysis to suggest, well, the record happens to support this crime and it carries with it this sentence. So therefore, I'm going to assume the jury would have found that and I'm going to say there was no prejudice as a result. I don't think that's an appropriate analysis, especially when we're dealing with the types of constitutional issues we're dealing with here. My time is up. Thank you, Your Honor. Thank you. Thank you, Ms. Bibikus. Ms. Palmer? May it please the Court. Oh, yes. Sorry. Is that better? May it please the Court. I'm Ann Palmer for Applebee's, which I'll refer to as the Commonwealth. Just to clarify the relief, or what we request for the outcome of this appeal, is that this Court affirm the denial of the wit, in that respect, affirm Judge Savage's opinion. But over time, these specific intent findings to the sufficiency, we couldn't disagree more with that. And as to the prejudice issue, we noted the Clark v. Magic case and supported the overall outcome, but we think it's unnecessary, actually, to reach that question, let alone the double-decker issues. Well, the jury, as Mr. Bibikus has stated, did not convict him of a second-degree offense. Well, we convicted him of first-degree murder and two counts of robbery, every charge charged in the indictment, in the case of information he was convicted of. Why was it appropriate for the District Court to assume that he was convicted of a second-degree offense? The sentence would be the same as first-degree, if there were no prejudice. Your Honor stated the reasoning, which was that had this specific intent issue been pressed at the time, it wouldn't have gone anywhere, because the jury clearly concluded that Mr. Maney was guilty of second-degree murder, did not make it a verdict to that extent, effectively, because it obviously would be inappropriate to do so. Can we safely say that the jury's verdict of first-degree murder included its finding of guilt on all of the elements necessary for second-degree? Absolutely, together with the other judgments of sentence, and with the robbery convictions, he was convicted of both counts of robbery. In other words, the jury could not have convicted of first-degree murder without first having determined all of the elements of second-degree. Well, I wouldn't say it's one of those complicated, necessary, but sufficient, and that's one of the reasons we feel that double jeopardy issues are absolutely inappropriate to get into at this level without any state court presentation first, because it gets into some complicated lesser-included offense issues that really aren't the issue here, but as you're pointing out, the jury's verdicts, taken as a whole, together, necessarily demonstrated the jury's conclusion that he was guilty of all offenses, and that the two robbery counts, together with the killing of Mr. Cain, was clearly adequate to support the second-degree murder charge. And a little bit of that, had they not concluded that Mr. Rainey shared the specific events of Cain, and it's hard to read this transcript as I did again this weekend, and not come away with the sense that he was more culpable than the shooter. Second-degree was in the verdict sheet? Yes, it was, as was third, and it very simply didn't reach that as is appropriate, because they stopped at first-degree, and there was no need to go further. They were instructed on all levels of homicide. You argue that the evidence was sufficient to convict Mr. Rainey, based on the cumulative amount of circumstantial evidence, and also detected in Moss' testimony. Well, it's funny. When you read the other side's brief, you sort of get a sense that that was sort of the turning point, that everything hinges on the present, and nothing can be furthered from the truth. I mean, if you review the other witness testimony and the physical evidence, I mean, there are at least 10 hallmarks of a specific intent, leaving aside anything the 15-year-old convict's brother said on the stand, in any statement whether oral or written, and the ghost of evidence is that it's important to look at the transcript as a whole, as are the other inferences that were taken as a whole, construed in favor of the convict, and the McDaniel decision re-emphasized that emphatically. And the guidance is also important and essential, and if you assume, as Mr. Rainey would like you to do, that this issue of sufficiency was fairly presented to the state court, then you should also defer to the state court's resolution about the sufficiency issue, which is that looking exclusively at the evidence of the physical evidence and your witness testimony, there's more than enough to support a sufficiency finding. And I was pointing to the purchase of a handcuffs, the possession of a ammunition, which was clearly indicative of Rainey having a disposal, and the provision of a disposal for having a handcuff or gloves would be a reasonable inference for the jury to make. Do you have a case, Everett v. Deere? Are you familiar with the case? Absolutely. It seems to conclude that the conviction under the jury instructions given alone is prejudicial. Is your understanding this? Well, that was a jury instruction case, and so the first one is case as far as it's a sufficiency. But the conviction alone was sufficient to establish prejudice. Oh, in going to the conviction? Well, Your Honor, I guess- Well, I mean, if that's true, then Rainey's conviction alone is sufficient to establish prejudice. I'm trying to recall if that was an effectiveness. My recollection was that it was an instructional or a due process, but in any event, I'd have to take another look at it. But two of the key issues with Everett, it just emphasizes why this is a case in which first degree murder is appropriate and where there's specific intent. In that case, the prosecutor admitted at his closing that there was no shared intent, that there was no agreement to kill. The defendant, Mr. Everett, was the family driver, was completely in a different situation from Mr. Rainey. And I didn't know. The reply brief took issue with the question of whether Mr. Rainey closed the door before or after the shooting. And I just direct your audience to pages 45 to 46, page 87 and page 88 of Mrs. Kent's testimony, where she repeats it was after the shooting. Hypothetically. And so he was there. It's very different from Everett. Hypothetically speaking, supposing we disagree with you with respect to shared intent and we agree with the district court that there was ineffective assistance with regard to the shared intent. What do we do with Everett then? We ran the murder controls. I mean, the clerk remanded a resolution. I mean, that was a sufficiency claim. I mean, that's even more direct and to the point, rather than through the lens of ineffectiveness. But they concluded that the rape, you know, wasn't warranted because the rest of the murder pre-occurred. And we've got to remember that counsel and the defendant were making strategic judgments. And that's what struggled in the back of the states, that the post hoc murdering, murdering, murdering, and quarterbacking is not appropriate because if you need to transfer to the eliminated eligible victim for a ruling in a sufficiency manner, Mr. Vandell, to that counsel, was extremely aggressive in every step, which in his seventh session, which he thought was the strongest basis for relief from the bench. It was very clear in the scene, in the footnote in our case, that perhaps we courted some of the discussions with the trial court, which was clearly not going to give them a judgment of acquittal. And counsel strategically and appropriately kept pushing the seventh session, which he thought was strongest. He did not prevail, but that's what he thought was strongest. And in the back, counsel recognized the strategic determination that's had us in some of the cases. That's determination must be deferred to you. In cases as close as this one, how could it not be an effective assistance for counsel on appeal to fail to argue this sufficiency? Well, how could that be tactical? Because we believe there's clearly specific intent to kill. Every practitioner at trial believed that. Let me back up. We really was overwhelmed with his specific intent. If you compare this case to the standard second degree murder case, this is, as we mentioned, he's 10 years older, and you've got to also remember the standard of review takes into account the fact that the jury is looking at these defendants together and noticing that, you know, what is this 15 year old doing with these grown folks? And Mr. Williams' fingerprints metaphorically speaking, are always grown at any stage. And the jury was very entitled to read the evidence as a whole. There are reasonable inferences. We're not asking the court to do any reasonable inferences. But he was involved at every stage of the playing. He was present, close. He did not say after the shot was fired, he did not say, oh, Lutheran, what are you doing? This is a part of the playing. He stood close to the victim, looked at the victim in the mirror. The victim in the mirror who shot one victim and was quite possibly willing to shoot the other in front of him. So it's very clear that the killing of a human being was contemplated as part of his playing. And it's also clear that his actions could be equally interpreted as being absolutely horrified. He closed the door and stood there frozen thinking, oh, my God, this is going terribly wrong. That's an inference for the jury to draw. And they drew it the other way. And I couldn't help but intervene in this case. It's sort of a battle of the inferences. And, unfortunately, that's a battle that may be won decades ago. Jackson, even before the epi, excuse me, even before epi, that's an inference that the jury clearly drew in the common man's favor. And he has every basis for it. Think of how he came back again. He came back to his co-conspirators in the jury. He didn't come back to render aid. Again, leaving the frantic White Sparrow with the dead man on the floor. He then participated in the distribution of the proceeds. He was a fugitive and led the police on a sort of French commission-style car chase and foot chase in Philadelphia. At every stage, he was there and demonstrated his specific intent. And, again, I want to just emphasize that. Another thing that you have to remember is he was hit both ways at all times. He wants to delegate to a 15-year-old co-conspirator, but he's too much of what you would call a control freak. He has to stand and watch the crime unfold. And then he wants to run. It makes it a lot harder for him to say, oh, I'm an errant-style, hapless getaway driver, hapless co-conspirator, who had no knowledge that the killing of a victim was almost a certain outcome of giving a 15-year-old a loaded weapon. And the jury could infer from the lack of evidence, without going to Mr. Riley's statements, but, again, that was probably his testimony, that there was an important problem with this testimony. The jury could very well just establish that there was a mastermind and that Mr. Riley was putting it on everybody, putting this crime on everybody except Mr. Rainey. The argument this testimony established was there and very much a participant in the crime. Contrary to his alibi claim, there is no... What does that take us there? I gather your argument is that we should say counsel was not deficient, not raising the shared intent issue. Absolutely. The evidence was overwhelming. And in that situation, you cannot hold counsel ineffective for failing to raise a meritorious claim, especially when there were several other issues that counsel and both the trial and the trial judges did not work in the plan. You're asking us to reverse the magistrate and the district court in its essentially acquittal of Rainey? Absolutely. The jury's finding of guilt is entitled to balance under struggling and under redeeming. Where are we if we disagree with you on a deficient performance problem? Well, as we mentioned with Clerk Fernando, there is precedent for concluding that the issues are related to his corpus. It's reserved for the most meritorious of cases. And in this case, where he was guilty of everything, his problem is that he was too guilty, according to counsel. We don't seem very supportive of the district court's decision. We believe that the outcome is correct and there's precedent for the magistrate's finding. But we do disagree that someone as extraordinarily culpable, and I think it's hard not to feel the jury's indignation of the idea that Mr. Rainey is somehow less culpable than the 15-year-old when it's clear that he set up this crime and knew the outcome. I'm not sure you answered my question. I'm sorry. I say where are we if we disagree with you on a deficient performance? How do we analyze the prejudice? Well, then there's every reason to believe that as the district court found that it would not have changed the outcome and that's a determinant of an ineffectiveness claim. Well, we left a lot at a very undersecured foundation, didn't we? Well, let's say we ignore that by doing what the district court did and basically denying the verdict. We think that's appropriate. An alternative is to demand that the state court address the remedy component on one occasion. Say that again. The other alternative would be to demand to the state courts, which is typically what courts do in this court and the district court has done for granted in the world, is to allow the state courts to fashion an appropriate remedy and address whether— In your opinion, would the state court at that point have the right to modify the verdict? It would, and all of the double jeopardy concerns that we just emphasized, the jeopardy claim is never in the petition nor privacy law, all of those things are intertwined with state law and really something for the state courts to address and also the state courts often. Isn't that what the district court did? Yes, I think. I mean, he looked at the issue and said that it was inappropriate based on the lack of a different outcome for the petitioner, which is laid from the present, and that's clearly the end result of the right. And with a specific intent, by focusing on the merits, we don't want to encourage you to go to the merits insofar as he did default this. He did not fairly present it. We would just point out that Mr. Rainey is one of the most practiced litigants and that it's really interesting, isn't it, that both of the claims before this court are claims not ones that counsel talk of meritorious. The hearsay issue was brought up by Rainey in the colloquy and the double jeopardy claim, which was only raised in the post-objection statement. On the exhaustion question, you do have to acknowledge that in raising the lack of evidence to support a specific intent, that that's a sufficiency of the evidence argument as opposed to weight. Well, honestly, I spent a lot of time in appeals doing state court litigation. And Rainey's a different claim, and they're seen as such in the state courts. Weight concedes sufficiency, and he kind of stayed back in the state courts by wriggling and wriggling. Well, but one case out of the rest, he argues on weight. And to Rainey, requested in the trial, were all hallmarks of a weight claim. But it seems a superior court got it right twice. And the rule on sufficiency. If he can't have it otherwise, which he has to do, he can't have it otherwise. If it was fairly presented in the state court, then all predefinite supplies, and the state court's finding of sufficiency is entitled to balance, I'll give it to him. Thank you. Thank you. Oh, may I just quickly add, as a practical, we have OCR'd the entire transcript because I know it is a voluminous record, but it is important to look at all our transcript citations. We'd be happy to follow this with a clerk with four copies for all members of the bench. I'll do it with the clerk. Thank you. Mr. Borges. Thank you, Your Honor. Very briefly, Judge Fischer, Pennsylvania Superior Court, not Superior Court, it's Muchinski, we've cited it in the briefs. I wanted to clarify that. Neither was I. That's what I'm trying to clarify. Mr. Palmer suggests that we should ignore Everett, and I would assume that that is bonded at the court. It is analogous in every critical way to this case. The problem is there have been U.S. Supreme Court decisions after Everett that have said clearly that prejudice requires a strong... but for deficient performance, the result would have been different. That's true. Everett just basically says that conviction alone is prejudice. I'm not sure that that comports with Supreme Court doctrine. I would respectfully disagree with you, Judge. If you read Everett, there's a long discussion about the failure to object to the jury instructions. There was a link between that failure to object to the jury instructions on the shared intent issue and the resulting conviction. So you're right, the Supreme Court has stated that there needs to be a link between those two, but Everett provided that link, and I think it's also evident in this case as well. As far as the record goes, I think we've sufficiently addressed the disputes over some of the evidence that the commonwealth suggests adds up to an intent by Mr. Lane that Mr. Ryan shoot and kill this gentleman, and that's at the primary principle. What I would like to add to that is if you want to take a look... She mentioned Detective Moss' statement. If you want to take a look at how heavily they relied on that statement, all you need to do is read the closing statements on pages 115 and the record to 260 and something. All the closing statements only use the evidence, if you will, elicited from that testimony, and it was improper to use that against Mr. Ryan. Thank you, Judge. Mr. Vinicus, I understand you're pro bono counsel. Yes, Mr. Judge. The panel would like to thank you. Excellent briefs and arguments, and we really appreciate the services you and your firm have provided to others. Thank you, Judge. I appreciate that. Thank you very much. All right. Thanks very much to both counsel. It's a very difficult case. We will take it under advisement. Thanks very much.